## Case No. 7,815.

### In re KINGON.

[3 N. B. R. 446 (Quarto, 113); [1] 38 How. Pr. 392.]

District Court, S. D. New York. Jan. 27, 1870.

BANKRUPTCY—RETURN OF ASSIGNEE — MOTION TO AMEND.

Where solicitor of bankrupt moved that the assignee be ordered to amend his return in a certain respect, but nothing appeared to show wherein such amendment was proper or necessary, or what interest of the bankrupt would be affected, *held*, the assignee is not required to make the amendment.

[Cited in Re Blaisdell, Case No. 1,488.]

[In the matter of James Kingon, a bankrupt.]

By JOHN FITCH, Register:

The above entitled cause is now pending before me. That it appears by the schedules annexed to the petition of the above-named petitioner for adjudication of bankruptcy, and the amendments to the same, that the assets consist of a small amount of money, a few notes, and a large number of book accounts, amounting in the aggregate to about seventeen thousand dollars. There is no proof before me that any part of either of the notes or book accounts are collectible. The assignee, Stephen V. White, made his return on the 10th day of November, 1869, under oath, after the return of

the order to show cause why the said bankrupt should not be discharged, the material part of which is as follows, to wit: "That he, said assignee, as assignee of the estate and effects of said bankrupt, has received on account of the said estate the sum of thirty dollars and fifty cents in money, mentioned in the amended schedules of said bankrupt; that he has paid out for account of said estate the sum of nine dollars and fifty cents for the publication of the notice of his appointment as such assignee, which sum has been refunded to him by said bankrupt; that he has also received from said bankrupt the sum of twenty-five dollars on account of his fees as such assignee; that he has also received a portion of the promissory notes mentioned in the amended schedules of said bankrupt, but that all of said notes are, as deponent is informed and believes, barred by the statute of limitations, and are by said bankrupt pronounced worthless, and deponent believes them to be of no value whatever; and that deponent, as such assignee, has received no other assets whatever on account of said estate.

The solicitor for the bankrupt, upon petition, and the proceedings and proofs in this cause, moves for an order, requiring said assignee to amend his return as follows, to wit: "And that there has also come to my hands certain open accounts due the bankrupt as member of the firm of Kingon & Elmore, as are set forth in Schedule B 3 of amended schedules, which open accounts amount in the aggregate to seventeen thousand seven hundred and eight dollars and sixty-seven cents. I have made no effort to collect the same or any of them, and have no knowledge that they can or cannot be collected."

The decision of this motion involves the questions of the rights, powers, and duties of an assignee, and the power of the courts over them and their proceedings. It is to be regretted, that the framers of the bankrupt law did not, in defining the duties of the assignee, more fully state the power and duty of the court to control his action, and to compel his obedience to its orders, but the law and practice of the courts gives sufficient power to the courts for all practical purposes to compel the assignee to obey its orders. In England, the courts hold an assignee to be a person appointed by the court during the pendency of a suit, to do and perform certain acts under the direction and order of the court, or under the provisions of some statutory enactment. Wyatt, Prac. Reg. 355. He is an officer of the court (In re Burke, 1 Ball & B. 74), and cannot be disturbed by any body without leave of the court (Fairfield v. Weston, 2 Sim. & S. 96; Bryan v. Cormick, 1 Cox, 422; Wardle v. Lloyd, 2 Moll. 388; Hutchinson v. Lord Massareene, 2 Ball & B. 55; MS. case of Broad v. Wickham, 1 Smith, Ch. Prac. 635). His appointment was provisional only,

[1] [Reprinted from 3 N. B. R. 446 (Quarto, 113) by permission.]

and was subject at all times, upon proper cause shown, to removal by the court. Skip v. Harwood, 3 Atk. 564; Cooke v. Gwyn, Id. 690. He was appointed by the court as an indifferent person, and as an officer of the court, to act on behalf of all the parties in interest. Davis v. Duke of Marlborough, 2 Swanst. 125. The court itself had the care of the property in dispute, or effects of the estate, and the assignee was but the creature of the court. If he was interfered, intermeddled with, or threatened with violence, the court would protect him, and punish whoever molested him. Fitzpatrick v. Eyre, 1 Moll. 171. Such was the practice of the English courts until the passage of the English bankruptcy acts of 23 & 24 Vict. c. 134, and 12 & 13 Vict. c. 106, provide that the majority in value of the creditors who have proved their debts may choose an assignee subject to the approval of the court. A similar provision was unfortunately contained in the insolvent laws of this state, usually known as the two-third act, allowing the creditors to petition the court for the appointment of a person as assignee, naming the person whose appointment they requested. It was optional with the court to appoint the person so named, or to appoint some other person. He was an officer of the court subject to removal by the court, had no powers except such as were conferred upon him by law, and by the practice of the court (Verplanck v. Mercantile Ins. Co., 2 Paige, 452), and, under the order and direction of the court, exercised similar powers and duties as an assignee now does under the bankrupt act [of 1867 (14 Stat. 517)].

2 [In section 1 it is provided "that the jurisdiction of said court shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities, and conflicting interest of all parties; to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties, and due distribution of the assets among all the creditors; and to all acts, matters and things, to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt and the close of the proceedings in bankruptcy." Judge Blatchford, in Re Glaser [Case No. 5,474], held "that district courts had original jurisdiction in all matters and proceedings in bankruptcy, and that jurisdiction extends to all acts, matters and things to be done under and in virtue of the bankruptcy." The jurisdiction of said courts sitting as courts in bankruptcy is superior and exclusive in all matters arising under the statute. The estate surrendered is placed in the custody of the court so sitting in bankruptcy, and the officer (assignee or trustee) appointed to manage it is accountable to the court appointing him, and to that court alone. No state court has jurisdiction in or can withdraw the property surrendered, or determine in any degree the manner of its disposition. In re Barrow [Id. 1,057]; In re Schnepf [Id. 12,471]; In re Bowie [Id. 1,728]. The commencement of proceedings in bankruptcy at once transfers to the district court the jurisdiction over the bankrupt, his estate, and all parties and questions connected therewith, and operates as a supersedeas of all process in 'the hands of the sheriff of a state court and as an injunction against all other proceedings than such as may thereupon be had under the authority of the district court, until the question of bankruptcy shall be disposed of. Jones v. Leach [Id. 7,475]; Pennington v. Sale [Id. 10,939].

["The filing of a petition in bankruptcy at once brings the property of the insolvent into the bankruptcy court, and places it in its custody and under its protection as fully as if actually brought into the visible presence of the court. Being in the custody of the court, no other court can without the permission of the court in bankruptcy, interfere with it, and so to interfere is a contempt of the bankrupt court. In re Vogel [Case No. 16,983]; In re People's Mail Steamship Co. [Id. 10,970]; In re Kerosene Oil Co. [Id. 7,725]; In re New York Kerosene Oil Co. (same case on appeal) [Id.]; Brock v. Terrell [Id. 1,914]; In re Wallace [Id. 17,094]. The court has the power on the application of the assignee or trustee, to order the sale of encumbered property, free from encumbrances, transferring the liens from the property to the fund realized from its sale. In re Stewart [Id. 13,418]; In re Barrow [supra]; In re McClellan [Case No. 8,694]; In re Columbian Metal Works [Id. 3,039]; In re Salmons [Id. 12,268]; In re Alabama & F. R. Co., 1 N. B. R. (Quarto) 100; Foster v. Ames [Case No. 4,965]; In re Schnepf [supra]. "Any lien upon the property of a bankrupt, so long as the property is the possession of the court, or its officer, the assignee or trustee, can only be enforced in the district court sitting as a court of bankruptcy. In re People's Mail Steamship Co. [Case No. 10,970]; In re Davis [Id. 3,618]; Jones v. Leach [Id. 7,475]; In re Vogel [Id. 16,983]; Lee v. Franklin Ave. German Sav. Inst. [Id. 8,188]; In re Kerosene Oil Co. [Id. 7,725]; on appeal, In re Kerosene Oil Co. [Id. 7,726]; In re Rosenberg [Id. 12,055]." Ruthington, opinion as to powers of assignees under the court, &c., B. R. (volume 3) No. 16.] 3

The innovation upon the practice under the English common law of the courts appointing trustees, assignees, receivers, etc., caused by

---

the passage of the English bankrupt act, was seriously felt by the loss of thousands upon thousands of dollars by creditors of estates, when assignees were chosen by the creditors, as the courts appointed fit and proper persons, assignees to execute the trust, whereas the creditors usually choose some respectable but inefficient person, through whose inefficiency large sums were lost to estates, which an efficient person would have collected. The same was true of assignees under the bankrupt act of April 4, 1800 [2 Stat. 19], and under our late insolvent laws, which laws have been superseded by the bankrupt act of March 2, 1867 [14 Stat. 517]. The same fatal defect, the unfortunate provision allowing creditors to choose an assignee, is contained in section 13 of the bankrupt act of March 2, 1867. I think it safe to say, that owing to this unfortunate provision, full one-fourth of the assets of bankrupts have been lost to creditors, when, had the bankrupt act conferred upon the registers the appointment and control of the assignees, immense sums of money would have been collected, where, under the law as it stands, assignees do not make any effort whatever to collect; this is the uniform opinion of the registers and the attorneys practicing in this court, as well as creditors who have learned a sad lesson by experience. By the bankrupt act of 1841 [5 Stat. 440], the court appointed the assignees. By the English bankrupt act, the court could make an order to secure the proper fulfillment of the duties by the assignee, which was the reason why such large dividends were paid out of estates which were administered under said law, and could compel the assignee to execute any instrument necessary and proper in the proceedings in a cause; could punish him for any disobedience to any order or decree of the court, as for a contempt of court; such power was in the discretion of the judge in bankruptcy, who is an officer of the court of bankruptcy in England, having the same powers under the English law as a register in bankruptcy has under the American bankrupt law of March 2, 1867. Ex parte Bates, 21 Law J. Bankr. 20, 16 Jur. 459. The identical power is given to the court by section 18 of the bankrupt act of March 2, 1867, as follows: "That the court, after due notice and hearing, may remove an assignee for any cause which, in the judgment of the court, renders such removal necessary or expedient." "An assignee refusing or unreasonably neglecting to execute an instrument when lawfully required by the court, or disobeying a lawful order or decree of the court in the premises, may be punished as for a contempt of court."

By rule 19 of the general orders in bankruptcy, the duties of an assignee are in a measure defined, and his actions governed by the order of the court. An assignee cannot even designate a newspaper in which to publish the notice of sale of the bankrupt's estate. Such papers must be designated by the court or register (section 28, Bankr. Act, and Gen. Orders, 21), and may also by an order authorize the assignee to sell "any specified portion of the bankrupt's estate at private sale." And in making sales of real estate, the court or register can authorize the sale thereof in parcels, and may, under the direction of the court, submit any controversy arising in the settlement of the demands against the estate, or debts due it, to the determination of arbitrators, etc. In re Graves [Case No. 5,709]. [All sales of property belonging to the estates of bankrupts made by holders of deeds of trust, mortgages, or judgment liens, are unlawful unless made by permission of the court after due notice of such application has been given to the assignee. In re Bigelow [Id. 1,396]; In re Davis [Id. 3,618]; In re Rosenberg [Id. 12,-055].[4] The court, after due notice and hearing, may remove an assignee for any cause which in the judgment of the court renders such removal necessary or expedient. That an assignee may, with the consent of the court, resign his trust and be discharged therefrom. Vacancies caused by death or otherwise in the office of assignee may be filled by appointment of the court. From the authorities above quoted, and the sections of the bankrupt act above cited, it is plain that an assignee is an officer of the court, subject to its control, and can be removed by the court for any good cause shown, and must obey the orders of the court, and when he so obeys, he is protected by the court. [The title to the property of the bankrupt immediately upon the filing of the petition is transferred to the court, and is vested in the register to whom the cause is referred, who is to keep it safely until it can be turned over to the assignee when appointed,—In re Hasbrouck [Case No. 6,189]; and the register may appoint a watchman or custodian to take charge of the property,—In re Bogert [Id. 1,599], In re Shafer [Id. 12,694]; and has the power to order the payment of fees and expenses incurred in the proceedings out of the funds in the hands of the assignee,—In re Lane [Id. 8,042]; and upon the appointment of an assignee, is to convey by deed all the property of the bankrupt of whatever name or nature except that which is exempt by law. The assignee then proceeds in accordance with sections 14–18, 25–28, 35–37, 39, 42, and 48 of the act.][4] Assignees will find it to their advantage to take the orders of the court when they contemplate doing any important act, that the registers should explain to them their duties, as the registers are familiar with the duties required of assignees. Any person interested in the acts of an assignee may apply to the court for an order requiring of such assignee the specific performance of any of his duties; and that in this case I have the power at this stage of the proceedings to grant the order asked for.

---

4 [From 38 How. Pr. 398.]

In re Gettleston [Id. 5,373]. As it was plainly the intention of congress to give the registers, acting as assistant district judges, the same power in all respects in cases pending before them, that the district judge has. Such has been the uniform decision of all the district judges and the registers who have written on the subject. Such power was absolutely necessary to be given to the registers in order to enable them to discharge the judicial duties devolving upon them. It would be an intolerable burden placed upon the district judges if, in addition to their present onerous duties, they were compelled to hear and decide the great number of applications necessarily made to the (register) court during the pendency of causes before them. It would ocupy the entire time of the judges in hearing motions and granting necessary orders, which judicial duties, by the bankrupt act and the decisions of the courts, the registers are required to perform. In re Gettleston [supra]. Experience has shown that the bankrupt act and the decisions of the court have not conferred too much power upon the registers, but, on the contrary, too little; and the amendment of the bankrupt act, giving the registers the entire administration of the law, would immensely facilitate the transaction of business, and relieve the district courts of an intolerable and unnecessary burden. Appeals from the register's decision should be to the district court in the same manner as appeals are now taken from the district to the circuit court.

The supreme court of this state, general term, First judicial district, Ingraham, J., held that an assignee was an officer of the court, and it was the duty of the court to make all orders to secure the proper fulfillment of his duties, and such has been the uniform decision of all our state courts. The right, duty, and power of the court to control the action of assignees is clearly given by section 18 of the bankrupt act, and is also in the inherent power of the court to exercise a sound discretion and controlling jurisdiction over its officers and suitors, as well as the subject matter of the action in any proceeding pending before it. 18 Wend. 652; 1 Denio, 659; 11 Johns. 254; 1 Grah. Prac. (3d Ed.) 671–675. In this case it is no hardship asked of the assignee to make the amended return asked for. It is right, just, equitable, and proper that he should do so, and a refusal on his part would be unjust, oppressive, and improper, and the petitioner has a right to ask that it be done; at the same time the assignee must be paid a proper compensation, to wit: the sum of ten dollars, therefor. I therefore hold that the assignee, Stephen V. White, upon the payment to him of ten dollars, must make and execute under oath and deliver to the register an amended return containing the amendments asked for, which amended return will be of the date of the original return, and to be executed nunc pro tunc.

The assignee, by his counsel, contends that the return already made is all the return, if any, he is compelled to make.

BLATCHFORD, District Judge. No reason is shown why the assignee should make the addition suggested to his return, nor is it shown how such addition is proper or necessary, or what particular object is to be subserved by his making it, or what interest of the bankrupt is to be promoted by making it, or to be injured by not making it. I therefore decide that the assignee is not required to make it. The clerk will certify this decision to the register, John Fitch, Esq.